NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-159

DAVID GOODWYN

VERSUS

PIVOD TECHNOLOGIES, LLC

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 233,209
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

REVERSED AND REMANDED.

James Kirk Piccione
Piccione & Piccione
P. O. Box 3029
Lafayette, LA 70502
(337) 233-9030
COUNSEL FOR PLAINTIFF/APPELLEE:
    David Goodwyn

**Koby D. Boyett**
**P. O. Box 12746**
**Alexandria, LA 71315**
**(318) 442-9462**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Pivod Technologies, LLC**

**EZELL, Judge.**

Pivod Technologies, LLC appeals the grant of summary judgment in favor of David Goodwyn in a dispute over commissions Mr. Goodwyn allegedly earned before resigning from Pivod. For the following reasons, we hereby reverse the decision of the trial court and remand this matter for further proceedings in accordance with our ruling.

Mr. Goodwyn was employed by Pivod from February 11, 2005, to July 7, 2008. His duties included marketing and sales. Mr. Goodwyn's contract with Pivod provided for a base salary of $105,000.00 per year and commissions on "qualified sales" where the proposals submitted to clients indicated a gross profit margin of 35% or more, regardless if that margin was actually realized by the company. Commissions were to be calculated as follows: 2% of qualified sales under $1 million, 3% of qualified sales from $1 million to $3 million, and 4% of qualified sales over $3 million. Commissions were to be paid in the pay period following the receipt of payment from a client.

Mr. Goodwyn landed a large account with the acquisition of Cisco Systems as a customer. In April 2008, Cisco contracted with Pivod to upgrade its San Jose Campus for a total cost of $3,366,410.00. Pivod received from Cisco a down payment of $2,221,800.00 on May 19, 2008.[1] Pivod never paid Mr. Goodwyn a commission on the $2.2 million down payment. Following a dispute over this and commission structure, Mr. Goodwyn resigned July 7, 2008. He filed the current suit to recover unpaid wages under La.R.S. 23:631 et seq.

---

[1] The date of the payment was referred to as either May 16 or 19 throughout the record. However, as testimony reflected, Cisco paid thirty days after purchase orders were placed and the purchase order attached to the record indicates an order date of April 19, 2008. Therefore, we use the later date here.

As part of his suit, Mr. Goodwyn filed for summary judgment as to liability and damages. After hearing argument and reviewing evidence, the trial court held the record open and requested that the parties provide additional evidence as to one question the trial court indicated had not been addressed by either side. After another hearing, the trial court granted the motion for summary judgment and rendered judgment in favor of Mr. Goodwyn, awarding damages as well as penalty wages and attorney fees. From that decision, Pivod appeals.

On appeal, Pivod asserts six assignments of error. The fifth is a repetition of the first and need not be addressed. The remaining five assignments of error can only be said to be a convoluted assertion that the trial court erred in finding there were no genuine issues of material fact as to four areas: Mr. Goodwyn's contract, when his employment ended, if a sale was made prior to his retirement, and if that sale, if any, was a qualified sale under the contract.

Louisiana Code of Civil Procedure Article 966(B) provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. The Louisiana Supreme Court discussed the standard applicable to appellate review of summary judgments in *Robinson v. Heard,* 01-1697, pp. 3-4 (La. 2/26/02), 809 So.2d 943, 945:

> A reviewing court examines summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hospital, Inc.,* 93–2512 (La.7/5/94), 639 So.2d 730, 750. A reviewing court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Smith,* 639 So.2d at 750.

2

Pivod first claims that there is a dispute as to whether a 2006 revision to Mr. Goodwyn's 2005 employment contract was valid, simply because a signed contract was not produced for trial. All the evidence in the record indicates that the 2006 contract was valid, and that assertion is patently untrue. Commissions in 2007 and 2008 were paid in accordance with that agreement. Further, all parties agree the 2006 revision was in effect. Mr. Goodwyn attests to this, as does Paul Barbian, the former CEO of Pivod. Further, Mr. Barbian attested that the contract was signed by both he and Mr. Goodwyn. Most damning for Pivod is that its sole witness, Kenneth Medford, states in his affidavit that the 2005 agreement was altered and specifically refers to the qualified sales provision and the triggering profit margins set forth by the 2006 agreement as being controlling. There is simply no evidence in the record to support Pivod's claim, and its argument is so utterly devoid of merit as to border on frivolity.

We will address Pivod's next two claims, that there exist genuine issues of material fact as to when Mr. Goodwyn's employment with Pivod ended and if any sale was made prior to that time, together.

Pivod states that Mr. Goodwyn was terminated May 31, 2008, by operation of a provision in the 2005 contract stating that the term of employment would end if Pivod left Louisiana. Therefore, Pivod disputes that Mr. Goodwyn's termination date is the date of his resignation, July 7, 2008. Everything in the record unmistakably shows that Mr. Goodwyn continued working for Pivod, being paid by Pivod, and even attempting to renegotiate his commission structure with the company beyond May 31, 2008. Moreover, for purposes of this claim for unpaid commissions, the date of termination is not relevant because the commissions would have been due before Pivod's alleged termination date if the sale was a qualified sale under the 2006 agreement.

Pivod claims that because Cisco revised its order with Pivod, Mr. Goodwyn would not have been due a commission on the project. We disagree. The 2006 contract provides: "Commissions will be paid in the pay period following receipt of payment by PIVoD [sic] Technologies, LLC from the client. If LLC receives payment from the client after payroll has been processed, the commission will be paid with the next regular payroll." Mr. Goodwyn claims that he was always paid commissions when Pivod received payment from clients in accordance with this provision. Mr. Barbian agreed with Mr. Goodwyn as to when commissions were issued, and those claims are undisputed.

The roughly $2.2 million down payment received by Pivod from Cisco was paid on May 19, 2008. This was prior to the termination date purported by Pivod of May 31, 2008. Mr. Goodwyn's contract with Pivod provided that the right to a commission vested on the date Pivod received payment from the customer. Thus, Mr. Goodwyn's right to a commission would have vested on May 19, 2008, the day Pivod was paid, if the sale was otherwise qualified under the contract. The claims concerning the termination of Mr. Goodwyn's employment with Pivod and the timing of the Cisco sale are without merit.

However, Pivod is correct that there remains a general issue of material fact as to whether the sale was a qualified sale, allowing Mr. Goodwyn to earn a commission. While Mr. Goodwyn avers that the gross profit margin on the Cisco proposal was a qualifying 35%, this claim is plainly disputed by Mr. Medford. Mr. Medford stated in his affidavit that "I swear to and confirm herein that the proposals for the Cisco Projects did not contain gross margins of 35% as is alleged in Goodwyn's Statement of Uncontested Facts." The trial court erred in finding no genuine issue of material fact as to this issue. Because there is a clear dispute as to the gross profit margin established in Mr. Goodwyn's proposal to Cisco, there still exists a genuine issue of

4

material fact as to whether he is due a commission for a qualified sale under the terms of his 2006 contract. Therefore, the trial court improperly granted summary judgment. Accordingly, we must reverse the finding of the trial court and remand this matter for further proceedings in accordance with our ruling.

The decision of the trial court granting summary judgment in favor of Mr. Goodwyn is hereby reversed and the matter is remanded. Costs of this appeal are to be split by the parties.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION, Uniform Rules-Courts of Appeal, Rule 2-16-3.